829 F.2d 1056
 56 USLW 2254
 John A. GJELLUM, Plaintiff-Appellant,
v.
The CITY OF BIRMINGHAM, ALABAMA, etc., Richard Arrington,
Jr., individually and/or as Mayor of the City of Birmingham,
Alabama; Arthur V. Deutcsh, individually and/or as Chief of
Police of the Police Dept. of the City of Birmingham,
Alabama, Defendants-Appellees.
 No. 86-7643.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 13, 1987.
 
 Jack H. Harrison, Gordon, Harrison & Lathum, Ann Arnold, Birmingham, Ala., for plaintiff-appellant.
 Charles Michael Melton, City of Birmingham, Charles H. Wyatt, Jr., Birmingham, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 Appellant John A. Gjellum, a police officer in Birmingham, Alabama, brought this 42 U.S.C. Sec. 1983 action against appellees, the City of Birmingham, Birmingham Chief of Police Arthur V. Deutcsh, and Birmingham Mayor Richard Arrington, Jr. Appellant's complaint alleged that appellees violated his constitutional rights by suspending him for attempting to tape record certain conversations between Gjellum and his superiors making public statements approving of Gjellum's suspension and ordering Gjellum to turn his cassette tape over to the police department and then failing to return the tape. We reverse the district court's order granting summary judgment for appellees and remand for further proceedings.
 
 
 2
 * The statement of facts agreed upon by the parties in the district court's pre-trial order indicates that Chief Deutcsh ordered appellant suspended without pay for forty-five days from his position as a full-time Birmingham city police officer.[1] Gjellum was charged with secretly taping, or attempting to tape, certain conversations regarding official police business that Gjellum had with his superior officers, and with conveying official information to others without authority.[2] Mayor Arrington publicly expressed his official and personal approval of the suspension in newspaper editorials, on television, and in press releases. At some point, Gjellum complied with a direct order from the police department to surrender the tape allegedly used to record conversations with his fellow officers.
 
 
 3
 Gjellum appealed his suspension to the Jefferson County Personnel Board (Board). The Board held a hearing at which the district court found all parties were present and represented by counsel. The Board reversed Gjellum's suspension and ordered Gjellum reinstated with backpay because "there was no written or oral policy of the police department prohibiting the taping of peers or supervisors on September 29, 1983, the time of the incident."
 
 
 4
 The City appealed the Board's decision to the Circuit Court of Jefferson County, Alabama. City of Birmingham v. Personnel Board of Jefferson County, Alabama, No. CV 84-1671 (Cir. Ct. Jefferson Cty., Ala. Dec. 13, 1984). Gjellum's motion to intervene in the appeal was denied. A three judge circuit court panel ruled that an appeal from a Board decision is statutorily-limited in scope to "review[ing] questions of law and the question of whether or not the decision or order of the Board is supported by substantial and legal evidence." Applying this standard, the court affirmed the Board's decision.
 
 
 5
 Gjellum then brought this section 1983 action in the United States District Court for the Northern District of Alabama. The district court, relying upon University of Tennessee v. Elliott, --- U.S. ----, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), granted summary judgment for appellees. The court held that appellant was barred by the doctrines of claim preclusion and collateral estoppel from relitigating matters previously decided by the Board. As an alternative ground for its holding, the court found that appellant was not entitled to relief on the merits because: (1) his secret taping activity was not protected by the first amendment; (2) appellant had not been deprived of a liberty interest because his reputation was not damaged by appellees' conduct; and (3) any denial of due process was cured by the post-deprivation hearing.
 
 II
 
 6
 Although the district court's order discussed both claim and issue preclusion as supporting summary judgment for appellees, the res judicata dispute in this case concerns only the doctrine of claim preclusion.[3] 3] Issue preclusion does not create a basis for dismissing appellant's action. When the requirements for issue preclusion are met,[4] the parties may be prevented from relitigating issues actually decided in a prior action. In this case, both the Board and the circuit court found that appellant had been wrongfully suspended. Thus, issue preclusion would at most limit appellees' ability to relitigate issues decided adversely to them in the prior proceedings. Appellant's motion to preclude relitigation of issues decided in the state proceedings is not, however, before us in this appeal.[5] We do not decide therefore whether issue preclusion should have been applied against appellees. For purposes of this appeal, we need only decide that the doctrine of issue preclusion, even if applicable to the prior proceedings in this case, would not bar appellant's suit, and that summary judgment for appellees is not sustainable on that basis.
 
 
 7
 If claim preclusion applies either to the prior state court proceeding or to the state administrative proceeding, however, appellant's action might be barred. The basic rule of claim preclusion is that "when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 578-79, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974) (quoting Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1877)). It is now well established that, even in a suit under section 1983, a federal court must give the same "full faith and credit" to the records and judicial proceedings of any state court that they would receive in the state from which they arise. 28 U.S.C. Sec. 1738; Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Accordingly, we must first determine whether Alabama would give claim preclusive effect to the judgment of the Circuit Court of Jefferson County in this case. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 383, 105 S.Ct. 1327, 1333, 84 L.Ed.2d 274 (1985) ("issue whether there is an exception to Sec. 1738 arises only if state law indicates that litigation of a particular claim or issue should be barred in the subsequent federal proceeding.").
 
 
 8
 * The doctrine of claim preclusion in Alabama bars a subsequent suit on the same cause of action, including any issue that was or could have been litigated, if four elements are present: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was rendered on the merits; (3) the parties to both suits are substantially identical; and (4) the same cause of action is present in both suits. Tatum v. Kelley, 481 So.2d 1132, 1135 (Ala.1985); Broughton v. Merchants Nat'l Bank of Mobile, 476 So.2d 97, 101 (Ala.1985). The Circuit Court of Jefferson County is a court of competent jurisdiction to hear appeals from Personnel Board decisions, see 1945 Ala. Acts No. 248 Sec. 22 (as amended), and the court's judgment was rendered on the merits.[6] We need not decide[7] whether the same cause of action was present in both suits[8] because we conclude that, under Alabama law, the parties to the Jefferson County judgment was not substantially identical to the parties in this proceeding.
 
 
 9
 "Substantially identical" parties under Alabama law exist where the parties to both proceedings are "either the same, or in privity of estate, blood, or law with the original parties." Lott v. Toomey, 477 So.2d 316, 319 (Ala.1985). Claim preclusion thus may be applied in Alabama to bar litigants who were not actual parties to the prior judgment only where the non-party had either: (1) a mutual or successive relationship to the same property rights as a party to the prior proceeding;[9] or (2) substantially identical interests in the litigation and an actual opportunity to litigate in the prior proceeding.[10]
 
 
 10
 In this case, Gjellum was not an actual party to the Jefferson County judgment and his motion to intervene in that proceeding was denied. As the Alabama Supreme Court held in Lott, denial of permission to intervene is a significant factor in determining whether the parties are "substantially identical."[11] Moreover, whatever interests the Jefferson County Personnel Board had in the proceedings before the circuit court were substantially different from Gjellum's interests in vindicating his constitutional rights. Under these circumstances, we conclude that Alabama would not view the Board as "substantially identical" to Gjellum,[12] and would not, therefore, afford claim preclusive effect to the state circuit court judgment.[13]
 
 B
 
 11
 Our conclusion that appellant's suit is not barred by the state court judgment does not end our res judicata inquiry. The possibility remains that appellant's section 1983 claim might be barred by virtue of his having litigated his grievance before the Personnel Board.
 
 
 12
 The full faith and credit statute, 28 U.S.C. Sec. 1738, applies only to the judgments and records of state courts and not to decisions of state administrative agencies. See University of Tennessee v. Elliott, --- U.S. ----, ----, 106 S.Ct. 3220, 3224, 92 L.Ed.2d 635; McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). Prior to Elliott, this circuit held that a federal district court must engage in de novo review of a section 1983 claim even if the plaintiff pursued his or her constitutional claim in a state administrative hearing that was not reviewed by state courts. Sharpley v. Davis, 786 F.2d 1109, 1112 (11th Cir.1986); Holley v. Seminole County School Dist., 755 F.2d 1492, 1504-05 (11th Cir.1985).[14] The Supreme Court held in Elliott, however, that the "federal common-law of preclusion" requires that federal courts in section 1983 actions afford the same preclusive effect to unreviewed state administrative agency factfinding to which it would be entitled in the state's courts if the state agency "acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." Elliott, --- U.S. at ----, 106 S.Ct. at 3227.
 
 
 13
 As discussed above, we are not concerned in this appeal with the question of whether appellees may be precluded from relitigating factual issues decided adversely to them in the proceedings before the Board or the state court. We need not decide, therefore, whether the decision of the Jefferson County Personnel Board meets the United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) standards[15] adopted in Elliott, or whether Alabama courts would give issue preclusive effect to the Board's factual rulings. Rather, we must address the question of whether Elliott's conclusion that state issue preclusion rules must be applied in federal section 1983 actions to preclude relitigation of factual issues actually decided by a state agency should be extended to claim preclusion.
 
 
 14
 Given our conclusion above that the state court review in this case does not bar Gjellum's section 1983 action, we analyze the res judicata question as though the Board's decision had not been reviewed. As we find no prior decision directly on point, we begin with a discussion of relevant Supreme Court precedent.
 
 
 15
 In Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that the full faith and credit statute requires federal courts to apply state issue preclusion rules in section 1983 actions as long as the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issues actually decided in a prior state court proceeding.[16] The Court based its holding upon the fact that "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so." Id. at 94, 101 S.Ct. at 415. The Court concluded that:
 
 
 16
 [N]othing in the language of Sec. 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. Sec. 1738.... Section 1983 creates a new federal cause of action. It says nothing about the preclusive effect of state-court judgments.
 
 
 17
 Moreover, the legislative history of Sec. 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion.... [T]he legislative history as a whole ... lends only the most equivocal support to any argument that, in cases where the state courts have recognized the constitutional claims asserted and provided fair procedures for determining them, Congress intended to override 1738 or the common-law rules of collateral estoppel and res judicata. Since repeals by implication are disfavored ... much clearer support than this would be required to hold that Sec. 1738 and the traditional rules of preclusion are not applicable to 1983 suits.
 
 
 18
 Id. at 97-99, 101 S.Ct. at 416-17.
 
 
 19
 The Court, in Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), faced the issue of whether the holding in Allen that section 1738 obligated federal courts to apply state issue preclusion rules to determine whether the issue preclusive effect of a prior state court judgment in a section 1983 action should be extended to claim preclusion. The Migra Court concluded that "[i]f Sec. 1983 created an exception to the general preclusive effect accorded to state-court judgments, such an exception would seem to require similar treatment of both issue preclusion and claim preclusion." Migra, 465 U.S. at 84, 104 S.Ct. at 897.
 
 
 20
 Despite the apparent simplicity of the holding in Migra that the full faith and credit statute requires that a federal court enforce state claim preclusion rules in determining whether a state court judgment precludes a subsequent section 1983 action, the Supreme Court's decisions leave little doubt that federal preclusion requirements must also be satisfied in order to bar a section 1983 action.[17] In Migra, the Court suggested that a section 1983 action might be allowed to proceed even where the claim would be barred by state claim preclusion rules if the plaintiff could not have presented his or her federal claims in the state proceeding.[18] In Allen, the Court allowed state issue preclusion rules to foreclose relitigation of issues in a section 1983 suit as long as the state court was acting within its proper jurisdiction and the parties received a full and fair opportunity to litigate federal claims. Allen, 449 U.S. at 104, 101 S.Ct. at 420. The Allen Court noted, however, that "[o]ther factors, of course, may require an exception to the normal rules of collateral estoppel in particular cases." Id. at 95 n. 7, 101 S.Ct. at 415 n. 7. Kremer v. Chemical Constr. Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) and Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), moreover, suggested that Allen did not define the outer limits of what additional federal preclusion requirements might apply and that "[a]s a general matter, even when issues have been raised, argued, and decided in a prior proceeding, and are therefore preclusive under state law, '[r]edetermination of [the] issues [may nevertheless be] warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.' " Haring, 462 U.S. at 317-18, 103 S.Ct. at 2375. See also Kremer, 456 U.S. at 482, 102 S.Ct. at 1898 ("The State must, however, satisfy the applicable requirements of the Due Process Clause. A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment.").
 
 
 21
 The Court has also imposed federal preclusion requirements in addition to any state preclusion rules in the context of unreviewed administrative agency decisions where section 1738 is inapplicable. In United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), the Court declared that res judicata might apply to administrative agency decisions "[w]hen [the] administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." Although no question as to the role of state preclusion rules was presented in Utah Construction because the case involved an agency created under federal law, the Court in University of Tennessee v. Elliott, --- U.S. ----, ----, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986), allowed state preclusion law to determine the preclusive effect of unreviewed state agency factfinding as long as the Utah Construction requirements are also satisfied.
 
 
 22
 Where federal rights are at issue, these cases underscore the vital role of federal preclusion rules in assuring that binding the litigant to a prior determination comports with federal constitutional and statutory requirements even when the federal court is also bound to look to state preclusion law. The scope of the federal law requirements varies depending upon such factors as the nature of the forum[19] and the nature of the federal right at issue.[20] At some point, the importance of the federal rights and limited ability of the state forum to function as final adjudicator of those rights would require such substantial supplemental federal preclusion requirements as to make resort to state preclusion rules a mere token gesture achieved at the expense of judicial economy. We have reached that point in this case.
 
 
 23
 With respect to the claim preclusive effect of unreviewed state agency rulings, we conclude that the importance of the federal rights at issue, the desirability of avoiding the forcing of litigants to file suit initially in federal court rather than seek relief in an unreviewed administrative proceeding, and the limitations of state agencies as adjudicators of federal rights override the lessened federalism concerns implicated outside the contours of the full faith and credit statute. In addition, claim preclusion, unlike issue preclusion, does not create a risk of inconsistent results in this context after Elliott because claim preclusion seeks to prevent litigation of issues that were not adjudicated before the state agency.[21] We hold therefore that, at least in the context of section 1983 suits, the federal common law of preclusion does not require application of state claim preclusion rules to unreviewed state administrative decisions.
 
 
 24
 We need not engage in an extended discussion of the importance of the section 1983 remedy as Congress' purpose in creating the remedy was aptly summarized in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961):
 
 
 25
 It is abundantly clear that one reason [section 1983] was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.
 
 
 26
 Id. at 180, 81 S.Ct. at 480. Similarly, in Mitchum v. Foster, 407 U.S. 225, 242, 92 S.Ct. 2151, 2161-62, 32 L.Ed.2d 705 (1972), the Court noted that the legislative history of section 1983 indicates that:
 
 
 27
 Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts.... The very purpose of Sec. 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights--to protect the people from unconstitutional action under color of state law, "whether that action be executive, legislative, or judicial."
 
 
 28
 Section 1983 was thus intended to provide a federal forum for the vindication of federal rights. Allowing a state to dictate that an unreviewed decision of a state agency will foreclose litigation of a section 1983 claim even if the issues comprising the claim were not presented or decided by the agency would therefore be directly contrary to Congress' intent in enacting section 1983.
 
 
 29
 In Patsy v. Florida Int'l Univ., 634 F.2d 900 (5th Cir.1981) (en banc), a majority of the former Fifth Circuit[22] sitting en banc held that section 1983 litigants must first exhaust adequate and appropriate state administrative remedies prior to bringing a section 1983 action in federal court. As a necessary corollary to this holding, this court indicated that:
 
 
 30
 It must be kept in mind that we are here dealing with state administrative remedy exhaustion, not state judicial exhaustion. Unlike judicial actions, state administrative proceedings carry no res judicata or collateral estoppel baggage into federal court. Resorting to appropriate and adequate state administrative remedies in no way precludes federal court protection of federal constitutional and statutory rights. At most it can only delay federal court action, at best it could eliminate the need for such action.
 
 
 31
 Id. at 910.
 
 
 32
 On appeal, the Supreme Court reversed this court's holding that available state administrative remedies must be exhausted prior to bringing a section 1983 action in federal court. Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Although the Court did not expressly discuss whether claim preclusion rules apply to unreviewed state agency decisions, Justice Marshall's majority opinion left undisturbed the en banc former Fifth Circuit's holding that res judicata does not apply to state administrative decisions in subsequent section 1983 suits. Four justices writing separately expressly endorsed the view that wise policy considerations favor allowing exhaustion of state administrative remedies prior to filing a section 1983 action.[23] It is fairly evident that none of the justices favoring an exhaustion requirement contemplated that a plaintiff who fulfills the requirement would then be barred by claim preclusion from bringing a section 1983 action if the state would apply claim preclusion to the administrative remedy.
 
 
 33
 Perhaps more important, however, is the fact that the Patsy Court's discussion of "recurrent themes" in the debates over section 1 of the Civil Rights Act of 1871 indicates that Congress "assigned to the federal courts a paramount role in protecting constitutional rights." Id. at 503, 102 S.Ct. at 2561 (emphasis added). The Patsy Court found that the 1871 Congress "intended Sec. 1 to 'throw open the doors of the United States courts' to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights, and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary." Id. at 504, 102 S.Ct. at 2561 (citation omitted) (emphasis added). Thus, Patsy recognized that Congress intended courts, not agencies, to be available for those who had been deprived of their constitutional rights, despite any provision in state law to the contrary. Moreover, a "second theme" in the congressional debates was that a "major factor" leading to the enactment of sections 1 and 2 of the 1871 Act was "the belief of the 1871 Congress that the state authorities had been unable or unwilling to protect the constitutional rights of individuals or to punish those who violated these rights." Id. at 505, 102 S.Ct. at 2562. It was this belief that led Congress to establish the right to a federal court forum.
 
 
 34
 These conclusions are supported by McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), where the Court held that the federal common law of preclusion does not apply to state arbitration decisions in subsequent section 1983 actions in federal court. After noting that the full faith and credit statute was inapplicable to arbitration proceedings, the McDonald Court reversed the court of appeals' conclusion that the courts should fashion a rule of preclusion. The Court quoted the above-quoted language from Mitchum and concluded that:
 
 
 35
 Because Sec. 1983 creates a cause of action, there is, of course, no question that Congress intended it to be judicially enforceable.... [a]nd, although arbitration is well suited to resolving contractual disputes ... it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that Sec. 1983 is designed to safeguard. As a result, according preclusive effect to an arbitration award in a subsequent Sec. 1983 action would undermine that statute's efficacy in protecting federal rights.
 
 
 36
 Id. at 290, 104 S.Ct. at 1803 (emphasis added). Here, as in McDonald, the purpose and importance of section 1983, the limitations on state administrative agencies as forums for the protection of federal rights, and policy considerations favoring allowing initial resort to state administrative agencies without risking preclusion from relitigating matters beyond that actually adjudicated before the agency, counsel against any judicially-created claim preclusion rules.
 
 
 37
 Nor does the fact that these considerations were rejected by the Supreme Court in Elliott mean that we must apply both state claim and issue preclusion rules to unreviewed state agency decisions. Where the full faith and credit statute applies, the Court has held that "[i]f Sec. 1983 created an exception to the general preclusive effect accorded to state-court judgments, such an exception would seem to require similar treatment of both issue preclusion and claim preclusion." Migra, 465 U.S. at 84, 104 S.Ct. at 897. Given the holding in Elliott that, where the agency acted in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, unreviewed state agency factfinding must be given the same preclusive effect in a section 1983 action as it would receive in the state's courts, a mechanical application of the holding in Migra might suggest that state claim preclusion rules should also apply to unreviewed state administrative decisions.
 
 
 38
 We find, however, that significant differences between the issue in Migra and the issue presented here compel a different result. First, although the Court has found that Congress' intent to afford litigants a federal forum for vindication of federal rights was insufficient to override the express mandate of the full faith and credit statute, Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Court's decisions in the Title VII area suggest that the federal interests in providing a forum for those who allege a violation of their federal rights might prevail where the full faith and credit statute is inapplicable. In Kremer v. Chemical Constr. Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Court relied upon the fact that "Congress must 'clearly manifest' its intent to depart from Sec. 1738," id. at 477, 102 S.Ct. at 1895, in holding that Title VII does not create an exception to the full faith and credit statute. Nevertheless, the Court indicated that "it is clear that unreviewed administrative determinations by state agencies ... should not preclude [a trial de novo in federal court] even if such a decision were to be afforded preclusive effect in a State's own courts." Kremer, 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7 (citing Garner v. Giarrusso, 571 F.2d 1330 (5th Cir.1978)) (emphasis added). In Elliott, where section 1738 was inapplicable, the Court held that Congress' intent in enacting Title VII requires a trial de novo in federal court despite any federal common law faith and credit requirement.[24] Elliott, --- U.S. at ----, 106 S.Ct. at 3225. The Court's treatment of issue preclusion questions in the Title VII context therefore suggests that the full faith and credit statute is a more stringent requirement than the policies favoring resort to state preclusion law where section 1738 is inapplicable.
 
 
 39
 Second, the Court in Elliott carefully limited its holding to state agency factfinding. One of the reasons why the Migra Court would have had difficulty distinguishing claim from issue preclusion for full faith and credit purposes was the fact that the Allen opinion spoke broadly in terms of the "application of res judicata and collateral estoppel concepts," Allen, 449 U.S. at 97, 101, 101 S.Ct. at 416, 418, the "common-law rules of preclusion," id., and the "traditional doctrines of preclusion." Id. at 98, 101 S.Ct. at 417. Thus, Allen itself left little room for a restrictive construction. The Court's opinion in Elliott, by contrast, is couched in terms of preclusion based upon administrative agency factfinding. Although the federal courts generally have yet to decide what type of "factfinding" the Elliott Court had in mind, the contrast between the Court's restrictive terminology in Elliott and the broad language in Allen suggests that Elliott was intended to establish a much narrower rule of preclusion.
 
 
 40
 Third, although the Migra Court was unwilling to distinguish claim from issue preclusion for purposes of applying section 1738 to subsequent section 1983 claims, the Court has recognized that differences between claim and issue preclusion may warrant different full faith and credit requirements for the two preclusion doctrines. In Thomas v. Washington Gas Light Co., 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980), seven members of the Court agreed that a disability claimant who received an award of disability benefits by a state agency in one state would not be barred from seeking a supplemental award in another jurisdiction despite the fact that the courts of the first state would have barred a second proceeding. Justice Stevens' plurality opinion indicated that the full faith and credit clause might require application of the original forum state's issue preclusion rules[25] without also requiring application of the state's claim preclusion rules.[26] Similarly, in Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Court held that a lender who secured a consent judgment in state court would not be barred by state claim preclusion rules from litigating issues of fraud, deceit, and malicious conversion under section 17 of the Bankruptcy Act, 11 U.S.C. Sec. 35, in a federal bankruptcy proceeding even though the state from which the judgment arose would have barred litigation of these issues as part of the lender's original claim. The Court nevertheless went on to conclude that the full faith and credit statute might require that a bankruptcy court apply state issue preclusion rules to factual issues decided by the state court.[27]
 
 
 41
 Adhering to full faith and credit policies in the context of issue, but not claim, preclusion is justified because of the different interests implicated by the two doctrines. As we noted above,[28] declining to apply state claim preclusion rules to unreviewed agency decisions would create little risk of inconsistent state and federal adjudications given the holding in Elliott that state agency factfinding is entitled to full faith and credit under certain circumstances. As the Court explained in Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), judicial economy in general is not furthered by precluding litigation of issues not previously adjudicated:
 
 
 42
 Although petitioners also contend that a special federal rule of preclusion is necessary to preserve important federal interests in judicial administration, we fail to understand how any such interests justify the adoption of a rule that would bar the assertion of constitutional claims which have never been litigated. Petitioners allude generally to the interests that underlie the principles of collateral estoppel, such as the elimination of "the expense, vexation, waste, and possible inconsistent results of duplicatory litigation." Yet these interests are quite simply inapplicable ... [where] there is no adjudication whatsoever of any issues that may subsequently be the basis of a Sec. 1983 claim.
 
 
 43
 Id. at 322 n. 11, 103 S.Ct. at 2377 n. 11 (citations omitted).
 
 
 44
 In fact, interests of judicial economy favor a rule that unreviewed state administrative agency decisions will not receive claim preclusive effect in a section 1983 action. First, federal courts attempting to determine whether claim preclusion should apply to particular state agency decisions would have to engage in a probing analysis of state claim preclusion rules supplemented by a variety of federal claim preclusion requirements.[29] A per se rule holding that unreviewed state agency decisions will not have claim preclusive effect in a subsequent section 1983 action would thus conserve judicial resources and avoid the vexation to litigants that would arise from uncertainty over the res judicata effect of the unreviewed agency decision. Second, it is likely that application of state claim preclusion rules to unreviewed state agency decisions would have an adverse effect upon the overburdened federal court system. Plaintiffs who face a risk of claim preclusion by seeking any form of relief from a state administrative tribunal may elect to bypass available administrative remedies and bring their claims in federal court in order to preserve their right to seek complete relief in a federal forum.[30]
 
 
 45
 We hold therefore that unreviewed state agency decisions will not receive claim preclusive effect in a section 1983 action regardless of whether a court of the state from which the judgment arose would bar the section 1983 claim. Where the agency acted in a judicial capacity and resolved disputed issues of fact properly before it which the parties had an adequate opportunity to litigate, a federal court in a section 1983 action may, of course, consider whether the state would give preclusive effect to the state agency factfindings and, if so, whether any additional federal preclusion requirements apply to prevent precluding relitigation of this factfinding. See Elliott, --- U.S. at ----, 106 S.Ct. at 3227. The district court in this case therefore erred in concluding that Gjellum's action is barred by res judicata.
 
 III
 
 46
 On the merits, appellant raised several constitutional claims. His amended complaint alleged at least six due process claims: (1) that he was suspended without receiving his procedural due process right to adequate notice because Gjellum's acts were neither prohibited by statute or ordinance nor proscribed by rule or regulation of the Birmingham Police Department or the Jefferson County Personnel Board;[31] (2) that he was suspended without receiving his procedural due process right to adequate notice because appellees failed to serve Gjellum with written charges clearly setting out the delinquency for which he was to be suspended; (3) that Gjellum's forty-five day suspension violated his due process rights because appellees lacked authority under state law to suspend Gjellum for more than five days for a single offense or more than ten days in any given year; (4) that appellees denied Gjellum a liberty interest in his reputation by unlawfully suspending him and making defamatory public statements; (5) that Gjellum's due process rights to a fair hearing before the Personnel Board were violated because appellee Deutcsh intimidated Gjellum's fellow officers who were called to testify; and (6) that appellees denied Gjellum's property interest in his cassette tape by ordering him to surrender the tape and refusing to return it. In addition, appellant raised an equal protection/due process claim alleging that appellees selectively enforced the rules and regulations used as authority for appellant's suspension, and a first amendment question regarding whether appellees' acts of confiscating appellant's tape and suspending him were in retaliation for appellant's exercise of protected speech and association rights at a meeting of the fraternal order of police. Finally, appellant alleged that the City of Birmingham, through official policy and custom, failed adequately to train Chief Deutcsh and failed to act to remedy the deprivation of appellant's rights.
 
 
 47
 In addition to granting summary judgment for appellees on res judicata grounds, the district court held that appellees were entitled to relief as a matter of law on the merits of all of appellant's claims. In what it described as a "brief" disposition of the constitutional issues presented, the court held that the activity of secretly taping conversations is not protected by the first amendment, that appellant's interest in his reputation was not a constitutional liberty interest, and that any deficiencies in the pre-suspension process afforded to appellant were cured by post-suspension proceedings.
 
 
 48
 We conclude that the district court should reconsider granting summary judgment on the merits de novo on remand. We are unable to determine from the record or the brief district court disposition of the merits of the claims whether genuine factual disputes preclude summary judgment on the merits. At least the following facts appear to remain in dispute: (1) whether Chief Deutcsh had authority to suspend Gjellum without pay for forty-five days; (2) whether appellees confiscated appellant's tape in retaliation for appellant's activities with respect to the fraternal order of police; and (3) whether Chief Deutcsh attempted to intimidate officers who were to testify at Gjellum's hearing. As we stated in Tippens v. Celotex Corp., 805 F.2d 949, 952-53 (11th Cir.1986):
 
 
 49
 If one or more of the essential elements [of a claim or defense] is in doubt, then summary judgment must not be granted. Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment.
 
 
 50
 On remand, the district court should reconsider whether factual disputes preclude granting summary judgment.
 
 
 51
 Moreover, the district court's conclusion that appellant suffered no detriment because he received a full post-termination hearing before the Jefferson County Personnel Board, resulting in his reinstatement with back pay, strongly suggests that the district court equated the question of what damages appellant suffered with the question of what process was due. Even if appellant can prove no right to compensatory damages, he may still be entitled to nominal damages if he succeeds in proving a procedural due process violation. Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).
 
 
 52
 Finally, in light of our disposition of the res judicata questions presented, the district court might conclude on remand that appellees are precluded from relitigating certain issues regarding the legality of the suspension. If issue preclusion applies,[32] the district court will have an opportunity to consider whether the precluded issues alter its conclusions as to the merits of appellant's claims.
 
 
 53
 We therefore reverse the order of the district court granting summary judgment for appellees and remand for further proceedings.
 
 
 54
 REVERSED and REMANDED.
 
 
 
 [1]
 Chief Deutcsh officially charged Gjellum with violating rules and regulations of both the Jefferson County Personnel Board Rules and Regulations and the Birmingham Police Department prohibiting conduct unbecoming a police officer and "any other" act or omission contrary to good order or discipline
 
 
 [2]
 Gjellum's amended complaint alleges that he recorded conversations with Birmingham Police Sergeants Julius Walker and Dale Roberson concerning "how Gjellum's and other officers' job assignments would be affected by the Birmingham Police Department's implementation of the Federal Consent Decree concerning seniority of black police officers." Appellant's complaint alleges that Walker and Roberson "made no statements concerning any official or confidential police business." Gjellum also admits in his complaint that he had a tape recorder in his pocket during a conversation with Birmingham Police Captain Richard Lambert, but contends that the conversation was not actually recorded. Gjellum also alleges that he openly taped, on the same cassette with his conversation with Walker and Roberson, a meeting of Birmingham's Fraternal Order of Police (FOP) with its legal counsel. Gjellum's complaint alleges that the FOP meeting "was taped over and eradicated the tape of the conversations with Sergeants Walker and Roberson."
 
 
 [3]
 An explanation as to terminology in this opinion is required because of the continuing confusion over proper use of terms related to the preclusive effects of a prior adjudication. See generally 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4402 (1981) ("The effects of former adjudication have been discussed and determined in varying and occasionally conflicting terminology."). The Supreme Court explained the variation in term usage in Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984):
 The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. The effects are referred to collectively by most commentators as the doctrine of "res judicata." Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.
 This Court on more than one occasion has used the term "res judicata" in a narrow sense, so as to exclude issue preclusion or collateral estoppel. When using that formulation, "res judicata" becomes virtually synonymous with "claim preclusion."
 (citations omitted). In this opinion, we shall refer to "res judicata" in the broad sense of that term as encompassing both claim and issue preclusion. We avoid, where possible, use of "direct estoppel" or "collateral estoppel" terminology as these terms refer to forms of issue preclusion.
 
 
 [4]
 A concise statement of the requirements for issue preclusion is difficult to formulate because of the several exceptions that may apply. Wright, Miller, and Cooper suggest the following general statement:
 [I]ssue preclusion arises in a second action on the basis of a prior decision when the same "issue" is involved in both actions; the issue was "actually litigated" in the first action, after a full and fair opportunity for litigation; the issue was "actually decided" in the first action, by a disposition that is sufficiently "final," "on the merits," and "valid"; it was necessary to decide the issue in disposing of the first action, and--in some decisions--the issue occupied a high position in the logical hierarchy of abstract legal rules applied in the first action; the latter litigation is between the same parties or involves nonparties that are subject to the finding effect or benefit of the first action; the role of the issue in the second action was foreseeable in the first action, or it occupies a high position in the logical hierarchy of abstract legal rules applied in the second action; and there are no special considerations of fairness, relative judicial authority, changes of law, or the like, that warrant remission of the ordinary rules of preclusion.... Issue preclusion, moreover, is available whether or not the second action involves a new claim or cause of action.
 
 
 [18]
 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4416 (1981). See Hart v. Yamaha Parts Distrib., Inc., 787 F.2d 1468, 1473 (11th Cir.1986). Where the full faith and credit statute applies, however, a federal court may not give a state court judgment greater issue preclusive effect than would the courts of the judgment rendering state. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)
 
 
 [5]
 The district court denied appellant's motion in limine as moot after the court granted summary judgment for appellees
 
 
 [6]
 See A.B.C. Truck Lines, Inc. v. Kenemer, 247 Ala. 543, 25 So.2d 511, 513 (1946) ("[A] decision is generally regarded as on the merits if it was not controlled by some technical status not affecting the merits of the controversy as by reason of improper parties, defects in pleadings, matters in abatement, nonsuits and the like.")
 
 
 [7]
 See Fisher v. Space of Pensacola, Inc., 461 So.2d 790, 792 (Ala.1984) (court need not reach issue of whether same cause of action was presented in both suits when court finds that the parties were not substantially identical)
 
 
 [8]
 See Sykes v. McDowell, 786 F.2d 1098 (11th Cir.1986), discussed infra note 12. We also need not decide whether appellant's Sec. 1983 claim could have been litigated in the state circuit court. See infra note 18
 
 
 [9]
 Alabama courts have defined "privity" strictly in terms of mutual or successor rights to property. See, e.g., Tatum v. Kelley, 481 So.2d 1132, 1136 (Ala.1985) (privity is defined as a mutual or successive relationship to the same rights of property); Fisher v. Space of Pensacola, Inc., 461 So.2d 790, 791 (Ala.1984) (same); Henderson v. Scott, 418 So.2d 840, 842 (Ala.1982) (same); Owen v. Miller, 414 So.2d 889, 891 (Ala.1982) (same); AAA Equip. & Rental v. Bailey, 384 So.2d 107, 109 (Ala.1980) (same). Because Gjellum did not share, and was not a successor to, any property right held by the Board, Gjellum could not have been in privity with the Board under Alabama law
 
 
 [10]
 A non-party may be bound by a judgment under Alabama law where the party "had a sufficient interest in the suit and participated in and controlled the litigation." Moody v. Moody, 339 So.2d 1030, 1034 (Ala.Ct.Civ.App.), cert. denied, 339 So.2d 1035 (Ala.1976). See also Owen v. Miller, 414 So.2d 889, 891 (Ala.1981) ("non-party who has an interest sufficiently close to the matter litigated and who had an adequate opportunity to litigate the issue in the prior proceeding, may be bound by the earlier judgment"). Cf. Butler v. Michigan Mut. Ins. Co., 402 So.2d 949, 953 (Ala.1981) ("there can be no privity where there is not an identity of interest"); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Moore, 349 So.2d 1113, 1115 (Ala.1977) (same)
 
 
 [11]
 Plaintiff Lott filed suit for declaratory relief against Leona, the personal representative of the estate of Barbara Murphy, whom Lott claimed was his common law spouse at the time of her death. Lott sought to bar Leona from relitigating the issue of whether a prior undissolved ceremonial marriage invalidated Lott's putative common law marriage to Murphy. The court concluded that, although the issue had been decided adversely to Leona in a prior consent judgment in a suit by Lott to recover workers' compensation benefits for Murphy, Leona was not "substantially identical" to the parties to the workers' compensation action because the denial of her motion to intervene gave her "no opportunity to present her arguments in the prior case," and the litigants in the workers' compensation action did not adequately represent Leona
 
 
 [12]
 Sykes v. McDowell, 786 F.2d 1098 (11th Cir.1986) supports our conclusion that Alabama would not preclude Gjellum's Sec. 1983 claim. In Sykes, an Alabama deputy sheriff appealed his discharge to the Etowah County Personnel Board. The Board ruled that the discharge was improper under Alabama law because only the sheriff may fire a deputy. When the sheriff then personally fired him, deputy Sykes took a second appeal to the Board. The Board ruled that this firing was also unlawful because the sheriff lacked authority to reopen the matter once the firing had initially been ruled improper. The sheriff appealed to the circuit court and the deputy was granted permission to intervene in the appeal. The court reversed the Board's decision and disposed of the case without a remand because it found that the Board had found sufficient grounds for the firing. The deputy appealed to the Alabama Court of Civil Appeals to contest the jurisdiction of the circuit court. The Court of Civil Appeals affirmed and the Alabama Supreme Court denied the deputy's petition for a writ of certiorari
 In the deputy's subsequent Sec. 1983 case, this court affirmed the district court's conclusion that the plaintiff was not barred by res judicata. We noted that the fact that the circuit court's review was limited to "whether evidence supports the factual findings of a personnel review board and whether the board has made errors of law" indicates that Sykes could not have raised his constitutional claims before the circuit court because the personnel board had ruled in his favor. Accordingly, the Sykes panel concluded that Alabama's "same cause of action" requirement was not satisfied. The court also found, however, that the parties to the Alabama circuit court proceeding were not "substantially identical" under Alabama law because Sykes had merely been an intervenor before the circuit court and the board was the actual appellee in that proceeding. This holding in Sykes compels a similar conclusion in this case where the plaintiff was not even successful in his attempt to intervene at the Alabama circuit court level and was not involved in any appeals before the Alabama appellate courts.
 
 
 [13]
 See Fisher, 461 So.2d at 792 ("If one element of res judicata is not met, the doctrine of res judicata is inapplicable")
 
 
 [14]
 But see Holley, 763 F.2d 399, 400 (11th Cir.1985) (preclusive effect in Sec. 1983 case of unreviewed state administrative proceedings by analogy to Sec. 1738 "is a difficult and arguably open question in this circuit which may be subject to differing analyses depending on the character of the administrative proceeding and the type of claim being raised in the federal action") (On Petition for Rehearing and Rehearing En Banc) (per curiam); Gorin v. Osborne, 756 F.2d 834, 838 n. 5 (11th Cir.1985) (relationship between Sec. 1738 and doctrine of administrative preclusion in Sec. 1983 context is arguably open)
 
 
 [15]
 The Elliott Court relied upon the Utah Construction standard for determining when state administrative factfinding is entitled to preclusive effect. This standard holds that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the factfinding the same preclusive effect to which it would be entitled in the state's courts. Elliott, --- U.S. at ----, 106 S.Ct. at 3227
 
 
 [16]
 The Court also indicated that "[o]ther factors, of course, may require an exception to the normal rules of collateral estoppel in particular cases." Allen, 449 U.S. at 95 n. 7, 101 S.Ct. at 415 n. 7
 
 
 [17]
 The question of whether a Sec. 1983 litigant in federal court will be barred by claim or issue preclusion is a question of federal law. Although the full faith and credit statute and the common law analog to Sec. 1738 recognized in University of Tennessee v. Elliott, --- U.S. ----, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), require looking to state law to determine the preclusive effect of a prior determination, state law in this circumstance is incorporated into federal law and does not operate of its own force and effect. Applying state law in these instances serves important federalism values and avoids the risk of conflicting results between different forums. See Elliott, --- U.S. at ----, 106 S.Ct. at 3227
 
 
 [18]
 The Migra Court noted that "[i]n the present litigation, petitioner does not claim that the state court would not have adjudicated her federal claims had she presented them in her original suit in state court." Migra, 465 U.S. at 84, 104 S.Ct. at 898. This circuit has viewed this language in Migra as a prerequisite to barring a Sec. 1983 claim. See, e.g., Jones v. Preuit & Mauldin, 808 F.2d 1435, 1444 (11th Cir.1987)
 
 
 [19]
 In both United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) and University of Tennessee v. Elliott, --- U.S. ----, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Court indicated that an administrative agency must have been "acting in a judicial capacity" as one prerequisite to its determinations having preclusive effect. Moreover, as we discuss infra, the Court has expressly declined to fashion a common law form of the full faith and credit statute that would require affording preclusive effect in Sec. 1983 actions to unappealed state arbitral decisions made pursuant to a collective bargaining agreement. McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)
 
 
 [20]
 In Haring, the Court held that "additional exceptions to collateral estoppel may be warranted in Sec. 1983 actions in light of the 'understanding of Sec. 1983' that 'the federal courts could step in where the state courts were unable or unwilling to protect federal rights.' " Haring, 462 U.S. at 313-14, 103 S.Ct. at 2373. See also id., 462 U.S. at 322, 103 S.Ct. at 2377-78 ("Adoption of petitioner's rule of preclusion would threaten important interests in preserving federal courts as an available forum for the vindication of constitutional rights."); McDonald v. City of West Branch, 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984) (Arbitration "cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that Sec. 1983 is designed to safeguard. As a result, according preclusive effect to an arbitration award in a subsequent Sec. 1983 action would undermine that statute's efficacy in protecting federal rights."). Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) viewed the question of whether state claim preclusion rules might bar litigation of a claim within the exclusive jurisdiction of the federal courts as dependent upon Congress' intent to impliedly repeal Sec. 1738 by the particular grant of exclusive jurisdiction. The Court noted that "[r]esolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action." Id. at 386, 105 S.Ct. at 1335
 
 
 [21]
 If the Sec. 1983 litigant actually litigates factual issues before the state agency, he or she may be precluded from relitigating the agency's factual findings under the Elliott standards. Assuming issue preclusion is properly invoked by the parties, Elliott thus prevents any real risk of adverse findings by state agencies and federal courts. Claim preclusion in this context therefore concerns issues that were not litigated before the agency or issues that were litigated but are not entitled to preclusive effect under Elliott because they do not constitute "factfinding" as that term is used in Elliott. See also Smith, Full Faith and Credit in Section 1983: A Reappraisal, 63 N.C.L.Rev. 59, 119 (1984):
 Potential exists for directly conflicting judgments and the defending party is faced with the expense of redundant litigation when an issue in the federal proceeding was actually litigated and determined in the prior action.... when an issue or claim has not been adjudicated by a state court [, however,] but would be subject to claim preclusion, the concerns regarding inconsistent rulings and the burden on the defendant are diminished and it is more likely that the interest in a choice of forum will control.
 
 
 [22]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [23]
 Justice O'Connor, joined by Justice Rehnquist, wrote that:
 [C]onsiderations of sound policy suggest that a Sec. 1983 plaintiff should be required to exhaust adequate state administrative remedies before filing his complaint. At the very least, prior state administrative remedies would resolve many claims, thereby decreasing the number of Sec. 1983 actions filed in the federal courts, which are now straining under the excessive caseloads.
 Patsy, 457 U.S. at 516-17, 102 S.Ct. at 2568 (O'Connor, J., concurring). Justice Powell, joined by Chief Justice Burger, agreed with the en banc majority that an exhaustion requirement should be imposed:
 The requirement that a Sec. 1983 plaintiff exhaust adequate state administrative remedies was the excepted rule of law until quite recently. The rule rests on sound considerations. It does not defeat federal-court jurisdiction, it merely defers it. It permits the States to correct violations through their own procedures, and it encourages the establishment of such procedures. It is consistent with the principles of comity that apply whenever federal courts are asked to review state action or supercede state proceedings.
 Moreover, and highly relevant to the effective functioning of the overburdened federal court system, the rule conserves judicial resources.
 Id., at 533, 102 S.Ct. at 2576 (Powell, J., dissenting) (citations omitted).
 
 
 [24]
 The Court relied upon the argument that Congress intended plaintiffs to have a trial de novo on Title VII claims as indicating that applying the federal common law of preclusion in the Title VII context would be inconsistent with congressional intent. The Court also found that the requirement in 42 U.S.C. Sec. 2000e-5(b) that the EEOC give "substantial weight to final findings and orders made by State or local authorities" suggests that applying the common law of preclusion would be inconsistent with congressional intent. The Court rejected both of these arguments as insufficient to justify creating an exception to the issue preclusion rules for Title VII cases where the full faith and credit statute applies because a state court judgment is involved. Kremer v. Chemical Constr. Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). See also Delgado v. Lockheed-Georgia Co., 815 F.2d 641 (11th Cir.1987) (similarities between Title VII and Age Discrimination in Employment Act (ADEA) suggest that federal common law of preclusion should not apply to unreviewed state administrative factfinding under Elliott rationale)
 
 
 [25]
 In fact, all of the opinions in Thomas expressed the view that the full faith and credit clause requires giving preclusive effect to state agency factfinding. See Elliott, --- U.S. at ----, 106 S.Ct. at 3226
 
 
 [26]
 The plurality overruled Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943) with the following explanation:
 The majority opinion in Magnolia took the position that the case called for a straightforward application of full faith and credit law: the worker's injury gave rise to a cause of action; relief was granted by the Texas Industrial Accident Board; that award precluded any further relief in Texas; and further relief was therefore precluded elsewhere as well. The majority relied heavily on Chicago, R.I. & P.R. Co. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757, for the propositions that a workmen's compensation award stands on the same footing as a court judgment, and that a compensation award under one State's law is a bar to a second award under another State's law....
 But Schendel did not compel the result in Magnolia. In Schendel, the Court held that an Iowa state compensation award, which was grounded in a contested factual finding that the deceased railroad employee was engaged in intrastate commerce, precluded a subsequent claim under the Federal Employers' Liability Act (FELA) brought in the Minnesota state courts, which would have required a finding that the employee was engaged in interstate commerce. Schendel therefore involved the unexceptionable full faith and credit principle that resolutions of factual matter underlying a judgment must be given the same res judicata effect in the forum State as they have in the rendering State. The Minnesota courts could not have granted relief under the FELA and also respected the factual finding made in Iowa.
 In contrast, neither Magnolia nor this case concerns a second State's contrary resolution of a factual matter determined in the first State's proceedings. Unlike the situation in Schendel, which involved two mutually exclusive remedies, compensation could be obtained under either Virginia's or the District's workmen's compensation statutes on the basis of the same set of facts. A supplemental award gives full effect to the facts determined by the first award and also allows full credit for payments pursuant to the earlier award. There is neither inconsistency nor double recovery.
 Id. at 281, 100 S.Ct. at 2660-61 (citations omitted) (emphasis added). The plurality's view that the full faith and credit clause might require application of the original forum's issue preclusion doctrines but not its claim preclusion doctrines was based at least in part upon the limitations of state administrative tribunals:
 We are also persuaded that Magnolia 's reliance on Schendel for the proposition that workmen's compensation awards stand on the same footing as court judgments was unwarranted. To be sure, as was held in Schendel, the factfindings of state administrative tribunals are entitled to the same res judicata effect in the second State as findings by a court. But critical differences between a court of general jurisdiction and an administrative agency with limited statutory authority forecloses the conclusion that constitutional rules applicable to court judgments are necessarily applicable to workmen's compensation awards.
 Id. at 281-82, 100 S.Ct. at 2661 (emphasis added).
 
 
 [27]
 Although the Court did not decide this question, it suggested that the full faith and credit requirements might differ for claim and issue preclusion:
 This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of Sec. 17, then collateral estoppel, in the absence of counterveiling statutory policy, would bar relitigation of those issues in the bankruptcy court.
 Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a Sec. 17 question should give collateral-estoppel effect to a prior state judgment. In another context, the Court has held that a bankruptcy court should give collateral-estoppel effect to a prior decision. The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result.
 Id. 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10 (citations omitted).
 
 
 [28]
 See supra note 21 and accompanying text
 
 
 [29]
 As we discussed supra, the Court's decisions make it clear that, even where a state court judgment is involved, several federal preclusion requirements must be satisfied in addition to state requirements. See, e.g., Haring v. Prosise, 462 U.S. 306, 313-14, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983) (state court judgment that would have preclusive effect under state law will not be given such effect by federal court unless: party against whom preclusion is sought had a full and fair opportunity to litigate the claim or issue; controlling facts or legal principles have not significantly changed since the judgment; and no special circumstances warrant an exception to the normal rules of preclusion). When a state agency decision is at issue, Elliott held that the federal court must also find (1) that the agency was "acting in a judicial capacity" in reaching its decision, and (2) that the resolved issues were properly before the agency
 
 
 [30]
 See, e.g., Mack v. South Bay Beer Distrib., Inc., 798 F.2d 1279 (9th Cir.1986), a post-Elliott case where the Ninth Circuit declined to afford issue preclusive effect to an unreviewed state agency decision. The court's decision was grounded in part on its finding, as a matter of federal law, that affording preclusive effect to the unreviewed state agency decision would have an adverse effect on the federal rights at stake and upon interests in judicial economy:
 If collateral estoppel is applied to federal issues implicitly determined in proceedings before the Unemployment Insurance Appeals Board, an employee with a federal discrimination claim might have to decide to forego state unemployment benefits rather than risk an adverse ruling that could have preclusive effect on a federal discrimination claim that he may not be adequately prepared to litigate before the Board. Moreover, the potentially higher awards at stake in discrimination claims could compel both employers and employees to litigate every unemployment benefits claim as if it encompassed a discrimination suit. Should this come to pass the Board may find it difficult to adjudicate unemployment benefit claims expeditiously. Consequently, an unemployed worker would be without benefits for a longer period of time than would be the case if his appeal had been decided without the additional delay created by determining a discrimination claim.
 Id. at 1284. This reasoning is equally applicable here. See also the discussion of Justice O'Connor and Justice Powell's opinions in Patsy, supra note 23, indicating that allowing initial resort to state administrative remedies would give states an opportunity to remedy violations and thereby eliminate the need for a Sec. 1983 action.
 
 
 [31]
 Alternatively, Gjellum's amended complaint also alleged a due process violation based upon inadequate notice because the rules and regulations under which Gjellum was suspended are unconstitutionally overbroad and vague
 
 
 [32]
 We do not reach in this appeal the question of whether issue preclusion applies to the proceedings before either the state agency or the state court