989 F.2d 450
 71 A.F.T.R.2d 93-1592, 93-1 USTC P 50,268
 John M. FORD, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
Robert J. GIBSON, Jane L. Gibson, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
Guy W. MILLNER, Judith A. Millner, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
McNeill STOKES, Judy F. Stokes, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 Nos. 92-8338 to 92-8341.
 United States Court of Appeals,
Eleventh Circuit.
 April 23, 1993.
Opinion on Rehearing June 29, 1993.
Rehearing and Rehearing En Banc Denied Aug. 6, 1993.
 
 Michael N. Wilcove, Trial Atty., Sally J. Schornstheimer, Gary R. Allen, Linda E. Mosakowski, Brian C. Griffin, Gilbert S. Rothenberg, U.S. Dept. of Justice, Tax Div., Washington, DC, Sharon Douglas Stokes, Asst. U.S. Atty., Atlanta, GA, for defendant-appellant.
 Robert J. Hipple, Atlanta, GA, for plaintiffs-appellees.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 GODBOLD, Senior Circuit Judge:
 
 
 1
 The United States has appealed from the decision of the district court finding that taxpayers are entitled to a tax credit for 1982. The parties have stipulated to all material facts leaving only a legal issue to be decided.
 
 
 2
 The case concerns construction of federal statutes relating to requirements that must be met by a taxpayer to obtain federal income tax credits for the rehabilitation of an historic building.
 
 
 3
 Taxpayers are partners in a partnership formed to buy and rehabilitate a certified historic building. In 1980 they acquired the building for $2,105,795, and, in May 1982, they began rehabilitation. Taxpayers had a plan to rehabilitate the building in phases, and they reasonably expected to complete all phases within 60 months after January 1, 1982. On January 1, 1982 the building had an adjusted basis of $2,082,395.
 
 
 4
 We have examined several statutory provisions, all in 26 U.S.C.[1] Section 38(a) permits income tax credits for investment in certain depreciable property. Section 46 establishes the amount of the credit. Section 46(a)(2)(F)(i) allows a tax credit of 25% of the portion of a property's basis attributed to qualified rehabilitation expenses (QREs) on a certified historic structure. Section 48(a)(1)(E) provides that "section 38 property" means "in the case of a qualified rehabilitated building, that portion of the basis which is attributable to [QREs]." Putting these provisions together, § 38 permits a tax credit for the amount calculated under § 46 on the portion of a qualified rehabilitated building's basis that is attributable to QREs.
 
 
 5
 The building in question is a certified historical structure as defined by § 48(g)(3). It is agreed that the QREs incurred by the taxpayers in 1982 amounted to $537,890 and that total accumulated QREs did not exceed the adjusted basis for the property until 1985. Further, the parties agree that the taxpayers reasonably expected to complete, and did complete, the rehabilitation in phases that were set forth in the plans made before the start of the rehabilitation. Tax credits are only available for QREs on qualified rehabilitated buildings.[2] Until the building had been substantially rehabilitated it was not a qualified rehabilitated building.
 
 
 6
 The government contends that the building was not substantially rehabilitated at the end of the 1982 taxable year because the QREs incurred during that year were less than the adjusted basis. According to the government the building became substantially rehabilitated, and thus a qualified rehabilitated building, in 1985 when the total QREs incurred constituted for the first time an amount greater than the adjusted basis.
 
 
 7
 The taxpayers contend that the building was substantially rehabilitated under § 48(g)(1)(C) in 1982 because the total projected expenditures for the entire 60-month period exceeded the basis in the building. They say that because their phased rehabilitation plan indicated that the expenditures would eventually exceed the adjusted basis, they are permitted to treat the building as being substantially rehabilitated in 1982 and in each year thereafter.
 
 
 8
 The statute provides that "a building shall be treated as having been substantially rehabilitated only if the [QREs] during the [60 months] ending on the last day of the taxable year" exceeds the adjusted basis. § 48(g)(1)(C)(i). The "taxable year" is 1982, the year for which taxable income is being computed. 26 U.S.C. § 7701(a)(23). Therefore, the 60-month period measures backward from the end of the taxable year--1982--so that the expenses the taxpayers were permitted to consider in 1982 were those incurred within 60 months of the last day of 1982. Since all the expenses had been incurred during 1982, they were within the 60-month period.
 
 
 9
 The statutory language does not establish a rule that if the building will eventually qualify as being "substantially rehabilitated," it may be treated as such for each year during the rehabilitation period, no matter how much (or how little) has been spent on the building's rehabilitation. That "60-month" period refers to the period before the end of the taxable year is confirmed by examining the clause explaining which basis should be used.
 
 
 10
 The adjusted basis of the property shall be determined as of the beginning of the first day of such [60-month] period, or of the holding period of the property (within the meaning of section 1250(e)), whichever is later.
 
 
 11
 26 U.S.C. § 48(g)(1)(C). If the 60-month period ran forward from the start of rehabilitation, there would be no need to provide an alternative to the first day of the period. If, however, the 60-month period runs backwards from the last day of the taxable year, it is possible that the taxpayers would not have owned the building on the first day of the 60-month period. Thus, it was necessary to include the alternative of the first date of the holding period.[3]
 
 
 12
 The statute is unambiguous. The only QREs considered are those incurred in the 60-month period measuring backward from the last day of the taxable year in which the credit is sought. The taxpayers' plan showing that they could rehabilitate the building in 60 months beginning January 1, 1982, and the cost they thought they would incur to do so, are only relevant to the "special rule" extending the period in which to accumulate QREs from 24 to 60 months, 28 U.S.C. § 48(g)(1)(C)(ii).
 
 
 13
 When statutory language is unambiguous a court must enforce the statute as written, absent a clearly expressed legislative intent to the contrary. RJR Nabisco, Inc. v. U.S., 955 F.2d 1457, 1460 (11th Cir.1992). The taxpayers can prevail only if they show a clearly expressed legislative intent to the contrary. They have not done so. A staff report states that "a rehabilitation qualifies only if the building has been substantially rehabilitated." Staff of the Joint Comm. on Taxation, 97th Cong., 2d Sess., General Explanation of the Economic Recovery Tax Act of 1981, at 114 (1981). This is contrary to the taxpayers' contention that the statute permits a building to be treated as substantially rehabilitated before it has actually attained that status on the basis of projected expenditures.
 
 
 14
 Treasury Regulation § Section 1.48-12 provides:
 
 
 15
 The investment credit for [QREs] is generally allowed in the taxable year in which the property attributable to the expenditure is placed in service, provided the building is a qualified rehabilitated building for the taxable year.
 
 
 16
 Id. § 1.48-12(f)(2). Because substantial rehabilitation is a requirement for a qualified rehabilitated building the regulation does not indicate that a credit may be permitted before the building is substantially rehabilitated. The regulation actually supports the interpretation that substantial rehabilitation is a prerequisite to obtaining a tax credit.[4]
 
 
 17
 Taxpayers contend that the government's interpretation could require QREs to be accumulated for several years before a tax credit could be obtained and is thus inconsistent with other provisions of the tax code requiring taxable income to be computed on an annual basis. This case, however, concerns tax credits which are calculated without reference to taxable income and have no effect on taxable income because they are applied directly to a taxpayer's tax liability. The government's interpretation thus does not hinder the annual calculation of net income; it simply prevents the taxpayers from obtaining a tax credit for expenses incurred and accounted for in prior years until a certain level is reached. If that results in a large tax credit being obtained in a single year, the taxpayers can carry the credit back and obtain a refund for prior years--a feature of the tax code that some of the taxpayers took advantage of when they claimed a credit in 1982.
 
 
 18
 As an alternative ground for affirmance the taxpayers say that they were entitled to a tax credit based on the "qualified progress expenditure" provisions of § 46(d). This was not raised in the trial court, which generally precludes its being raised on appeal. We have the discretion to consider a new theory if the issue is a pure question of law and the court's failure to consider it would result in a miscarriage of justice. NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir.1990). The interpretation of § 46 is a question of law, but the government contends that the taxpayers are procedurally barred from obtaining credits under § 46 because they did not raise this ground in their administrative claim for a refund. Alabama By-Products Corp. v. Patterson, 258 F.2d 892, 900 (5th Cir.1958), cert. denied, 358 U.S. 930, 79 S.Ct. 318, 3 L.Ed.2d 303 (1959). Whether the taxpayers raised this theory in their refund claim is an issue of fact, not law. Also, we see no miscarriage of justice in not permitting the taxpayers to assert a new theory at this late hour.
 
 
 19
 The taxpayers contend that, under the government's interpretation, they would be required to wait until the end of their projected 60-month rehabilitation period to obtain the tax credit. A taxpayer who has shown that he reasonably expects to complete the building in phases is entitled to use a 60-month period to accumulate QREs. 26 U.S.C. § 48(g)(1)(C)(ii). A credit for expended QREs will become available as soon as the QREs accumulated during the 60-month period ending on the last day of the tax year in question exceed the adjusted basis. This is true even if the taxpayer anticipates more rehabilitation in the future. The taxpayer thus does not necessarily have to wait 60 months to collect a credit; he only has to wait until accumulated QREs exceed adjusted basis.[5]
 
 
 20
 The taxpayers contend that, even if they were not entitled to the tax credits in 1982, the government should not have imposed a penalty for substantial understatement pursuant to 26 U.S.C. § 6661. The district court did not address this question because it concluded that the taxpayers were entitled to the tax credits in 1982. This issue should be addressed by the district court on remand.
 
 
 21
 REVERSED and REMANDED.
 
 On Petition for Rehearing
 
 22
 June 29, 1993.
 
 THE COURT:
 
 23
 In our opinion, p. 452 n. 2, we correctly quoted from 26 U.S.C. § 48(g)(1)(C)(i)[1]:
 
 
 24
 a building shall be treated as having been substantially rehabilitated only if the qualified rehabilitation expenditures[2] during the 24-month period ending on the last day of the taxable year exceed the greater of
 
 
 25
 (I) the adjusted basis of such property, or
 
 
 26
 (II) $5,000.
 
 
 27
 Appellees' petition for rehearing and suggestion for rehearing en banc notes that the body of the opinion, slip op. at 1681, truncated the quoted language.
 
 
 28
 At page 452, first column, the language "a building shall be treated as having been substantially rehabilitated" is substituted for the language "a building shall be treated as substantially rehabilitated."
 
 
 29
 In all other respects the petition for rehearing is DENIED.
 
 
 
 [1]
 Unless otherwise noted, all citations are to the version of the Code in effect in 1982
 
 
 [2]
 A qualified rehabilitated building is a structure that, among other things, "has been substantially rehabilitated." 26 U.S.C. § 48(g)(1)(A)(i). Substantial rehabilitation is defined in § 48(g)(1)(C):
 (C) Substantially rehabilitated defined.
 (i) In General. For purposes of subparagraph (A)(1), a building shall be treated as having been substantially rehabilitated only if the [QREs] during the 24-month period ending on the last day of the taxable year exceed the greater of
 (I) the adjusted basis of such property, or (II) $5,000.
 The adjusted basis of the property shall be determined as of the beginning of the first day of such 24-month period or of the holding period of the property (within the meaning of section 1250(e)), whichever is later.
 (ii) Special rule for phased rehabilitation. In the case of any rehabilitation which may reasonably be expected to be completed in phases set forth in architectural plans and specifications completed before the rehabilitation begins, clause (i) shall be applied by substituting "60-month period" for "24-month period".
 Id. § 48(g)(1)(C).
 
 
 [3]
 We are puzzled by the government's statement that the adjusted basis against which the accumulated QREs are to be measured is as of January 1, 1982. Section 1250(e)(1)(A) provides that when the taxpayer acquires property the holding period begins the day after the date of acquisition. The acquisition cost in 1981 was $2,105,795. The government refers to the adjusted basis as of January 1, 1982 as $2,082,395. Any date in 1981 is later than the first day of the 60-month period ending on the last day of 1982 or, for that matter, of 1985 as well. The record does not tell us why the basis on the day after the taxpayers bought the property is not used. If the difference is material, this can be straightened out on remand
 
 
 [4]
 The regulation later provides that, for purposes of determining when property is placed is service, the requirement that a qualified rehabilitated building retain in place 75% of the existing external walls can be deemed met under certain circumstances. Treas.Reg. § 1.48-12(f)(2). It does not provide that the requirement of substantial rehabilitation can ever be deemed or assumed to have been met
 
 
 [5]
 A good example of how the credit should work appears in Treas.Reg. § 1.48-12
 
 
 [1]
 Unless otherwise noted, all citations are to the version of the Code in effect in 1982
 
 
 [2]
 In our opinion we referred to "qualified rehabilitation expenditures" as QREs