United States Court of Appeals,

Eleventh Circuit.

No. 94-2278.

Alan THORNQUEST;  Marion Brady;  Thomas S. Ward, Plaintiffs-Appellants,

v.

Maxwell C. KING, individually and in his official capacity as Administrative Employee of Brevard Community College;  Robert E. Lawton, individually and in his official capacity as Administrative Employee of Brevard Community College;  Tace T. Crouse, individually and in his official capacity as Administrative Employee of Brevard Community College, et al., Defendants-Appellees.

Aug. 17, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-709-Civ-Orl-18), G. Kendall Sharp, Judge.

Before BLACK and BARKETT, Circuit Judges, and RONEY, Senior Circuit Judge.

BARKETT, Circuit Judge:

Professors Marion Brady, Thomas Ward and Alan Thornquest appeal from summary judgments entered in favor of Brevard Community College administrators, College President Maxwell King, and the individuals comprising the College Board of Trustees (collectively "defendants").[1] The professors claimed that defendants fired them to retaliate for their union activity and criticism of the administration in violation of their federal and state rights to free expression, petition, assembly and due process;  and that the College's policy on "dissent" violated their first amendment

_____

[1]The administrative employees were Robert Lawton, Tace Crouse, Everett Whitehead and Stevan McCrory;  the Trustees were Patrick Healy, John Jones, Rachel Moehle, Bernard Simpkins and Frank Williams.

rights; in addition, Brady claimed that the Board of Trustees deprived him of federal and state procedural due process.

Upon review, we conclude that the district court correctly found insufficient admissible evidence of unlawful motivation to support Ward's and Thornquest's unlawful discharge claims and affirm as to those claims without further discussion. *See* 11th Cir.Rule 36-1. However, for the reasons discussed below, we reverse the judgment as to Brady's claims and as to the challenge to the dissent policy.

## BACKGROUND

Marion Brady began teaching at the College as a sociology professor in 1976. Between 1988 and 1992, he was a vocal critic of the College administration and Board. In letters to the editor, public officials and the Board, Brady criticized the administration for, among other things, its expenditure of funds to build the King Performing Arts Center, its emphasis on public relations at the expense of education, and its budget process. He criticized the Board for, among other things, its inaction on his complaints of improprieties.

In 1992, the administration notified Brady that he would be transferred away from the main campus. President King then filed a petition with the Board for Brady's dismissal, pursuant to Rule 6A-14.0411(6), Florida Administrative Code, alleging that he was guilty of misconduct, gross insubordination and willful neglect of duty.[2] Brady responded that the petition was filed to retaliate

---

[2]The allegations against Brady included his failures to attend meetings with his dean, prepare proper course syllabi, and observe required office hours; his improper use of class time to

against him for exercising his federal and state rights to petition and engage in union activity, free speech, assembly and work.

Believing the Board to be biased against him, Brady requested that the Board permit the petition to be heard by a Hearing Officer of the Florida Division of Administrative Hearings; the Board denied his request. Brady (along with Ward and Thornquest) then filed a lawsuit in state court, asserting claims, under both state law and 42 U.S.C. § 1983, that his transfer and impending discharge violated his statutory and constitutional rights. In addition to damages, Brady unsuccessfully sought an injunction prohibiting the Board from hearing the discharge petition. By letter, Brady asked the Board to disqualify itself from hearing the petition because all of its members were biased against him. After only two of the five Trustees disqualified themselves, Brady filed a formal Suggestion for Disqualification of the remaining Trustees, pursuant to Section 120.071, Florida Statutes, which the Trustees denied.

Over Brady's objections, the Board ultimately held a public hearing at which Brady was represented by counsel. The three Trustees who had not recused themselves sustained the petition's allegations of misconduct and gross insubordination, rejected Brady's charges of unconstitutional retaliation, and discharged Brady. The Board also voted to deny Brady accumulated sick leave. Brady did not appeal the Board's decision in state court.

Meanwhile, defendants removed Brady's pending state suit to

---

criticize the administration; his recommendation that the entire administration be replaced in response to an official request for suggestions; and his refusal to observe the established chain of administrative authority in presenting job-related complaints.

federal district court.  As amended, the section 1983 suit made the following claims:  that defendants, in transferring and discharging Brady, as well as denying him accumulated sick leave, violated his federal and state constitutional rights to free speech, petition, assembly and due process;  that the College's policy on "dissent" was unconstitutional;  and that the Board deprived Brady of procedural due process because it failed to give him notice and an opportunity to be heard on the recommended denial of his sick leave, and because the Board and its legal adviser were biased against him due to the fact that they were defending against his section 1983 lawsuit.  The lawsuit requested damages, a declaration that defendants had violated Brady's rights, and an injunction requiring immediate reinstatement and prohibiting enforcement of the "dissent" policy.

Following discovery, the district court granted summary judgment against Brady, determining that principles of *res judicata* precluded federal review of all his claims because the Board already had considered them.  The court did not address the challenge to the College's policy on "dissent," but entered final judgment in favor of defendants on all claims.

## *DISCUSSION*

We review *de novo* the trial court's determination that it was precluded by the Board's action from considering Brady's claims and its failure to address the challenge to the dissent policy.  *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 609 (11th Cir.1991).

### *Preclusion of Brady's Claims*

In section 1983 actions, federal courts must afford the same

preclusive effect to unreviewed state administrative agency factfinding to which it would be entitled in the state's courts, provided the state agency was "acting in a judicial capacity," and "resolve[d] disputed issues of fact properly before it which the parties ... had an adequate opportunity to litigate." *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (quotations & citations omitted); *see also Gjellum v. City of Birmingham,* 829 F.2d 1056, 1070 (11th Cir.1987). Thus, before a federal court may look to state law to determine if agency factfinding is entitled to preclusive effect, the court must determine (1) that the agency was performing a judicial function; (2) that the parties had an adequate opportunity to litigate the issues; and (3) that the issues were properly before the agency.

Brady argues that the district court erred in finding his claims precluded by the Board's review for three reasons. First, he argues that his appearance before the Board did not constitute an adequate and fair opportunity to be heard because the Trustees were biased against him and had prejudged the case. Thus, the Board's review cannot be given any preclusive effect whatsoever. Second, Brady asserts that only administrative *factfinding* is entitled to preclusive effect. Therefore, the district court was not precluded from reviewing the Board's legal conclusions as to his constitutional claims. Finally, Brady contends that the Board proceedings cannot preclude his claims against the Board itself because the actions underlying these claims, to wit, his actual termination and the Board proceedings, were not complete at the time of the hearing and thus were not "before" the Board. Brady

also contends that due process concerns prohibit the Board from resolving his claims against the Board for its own wrongdoing.[3]

*Bias on the Part of the Board*

Before a federal court may look to state law to determine if agency factfinding is entitled to preclusive effect, the court must determine, among other things, that the parties had an "adequate opportunity" to litigate the issues before the administrative agency. *Elliott,* 478 U.S. at 799, 106 S.Ct. at 3226. An adequate opportunity means a "full and fair opportunity," *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 480-81, 102 S.Ct. 1883, 1896-98, 72 L.Ed.2d 262 (1982) (quotation omitted). An administrative hearing cannot be deemed fair if there was "actual bias" on the part of the administrative decisionmaker. *Burney v. Polk Community College,* 728 F.2d 1374, 1378 n. 11 (11th Cir.1984); *see Hall v. Marion School Dist. No. 2,* 31 F.3d 183, 191 (4th Cir.1994).

Thus, when an adequate claim alleging a biased factfinder or decisionmaker has been made, the district court must determine whether bias existed on the part of the factfinder or decisionmaker before any preclusive effect can be accorded. *See id.* Obviously,

---

[3]We initially reject defendants' arguments that Brady waived his claims by failing to appeal the Board's decision in state court and by appearing before the Board. First, a section 1983 claim cannot be barred by a plaintiff's failure to exhaust state remedies with respect to an unreviewed administrative action. *See Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *Gjellum,* 829 F.2d at 1070. Second, Brady alleged bias and took legal action to avoid appearing before the Board from the outset, and had he not appeared, the Board could have considered the petition in his absence. The record contains no suggestion of the "sandbagging" found in *Duffield v. Charleston Area Med. Cent., Inc.,* 503 F.2d 512, 515 (4th Cir.1974), cited by defendants, where plaintiff alleged bias only after losing at the administrative level.

if the tribunal is found to have been biased, the person appearing before it would not have had an adequate opportunity to be heard and the tribunal's findings would be entitled to no preclusive effect at all. As the Supreme Court has explained, "even when issues have been raised, argued, and decided in a prior proceeding, and are therefore preclusive under state law, redetermination of the issues may nevertheless be warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Haring v. Prosise,* 462 U.S. 306, 317-18, 103 S.Ct. 2368, 2375-76, 76 L.Ed.2d 595 (1983) (quotation & citation omitted).

We find that Brady presented an adequate claim of bias to the district court, as the record on summary judgment contained numerous allegations from which a court could find actual bias on the part of the three Trustees who heard the discharge petition—Simpkins, Moehle and Healy. This evidence, in summary, reflects the following: that Brady had publicly criticized not only President King and the administration, but the Board itself at times when one or all of the three Trustees were serving;[4] that President King had excoriated Brady before the Board on more than

---

[4]For example, in response to a Board request for specific incidents of faculty harassment and intimidation, Brady submitted a letter listing 22 instances in which he felt he had been harassed, "to suggest the possibility that a pattern exists." The letter criticized the Trustees for their inaction on past allegations of administrative misconduct and for threats and harassment he had received for past attempts to bring misconduct to the Board's attention. The letter also declared that he had received information concerning improper conduct by the College administration, but that he had not informed the Board because of the harassment that had resulted from his past criticism.

one occasion;[5] that several Board members, including Simpkins and Healy, had criticized Brady during Board meetings;[6] that the Board was considering discharging Brady even before President King filed the petition for his dismissal;[7] and that Brady's lawsuit against President King, the administration and the Board was pending during the hearing. *See Burney,* 728 F.2d at 1378 n. 11 (noting materiality of evidence showing Board in "adversarial posture" to plaintiff); *see also Hall,* 31 F.3d at 191-92.

Accordingly, we reverse and remand for a resolution of the bias issue by the district court. If the court finds that the Board was biased against Brady, the Board's actions are not entitled to any preclusive effect.

---

[5]At a Board meeting attended by Trustees Moehle, Simpkins and Healy, President King expressed outrage at Brady's letter to the Board. Labelling Brady's charges of mismanagement as "innuendoes," "wild allegations," and "lie[s]," King complained that the criticism came at a time "when we're working so hard to have a positive image ... in the legislature." Explaining that he wanted to "use this board meeting" to present various administrators to refute Brady's charges, King expressed hope that the Trustees "already know in their own mind[s]" that Brady's criticisms were unfounded; if so, he said, "[t]hen the administration's job has been done."

[6]Addressing Brady's critical letter to President King, Moehle declared that "something needs to be done to put a stop" to Brady's complaints; and Simpkins, referring to Brady's absence, stated that "that speaks for itself, the fact that he's not here."

[7]During a Board meeting, in response to King's repudiation of Brady's charges, the Board's attorney, Joe Matheny, cautioned Board members that they would be "prejudice[d] legally" and could not adjudicate a discharge case against Brady if King had convinced them that Brady's charges were false. In response to one Trustee's query about whether Brady could be dismissed or sued, Matheny advised the Trustees and King that Brady's letter was not a "sufficient basis to dismiss a disruptive faculty member." Matheny also said it would not be "proper for this board to take it upon itself to terminate anybody, except based on the recommendation of the college president."

*Scope of Preclusion*

If the trial court determines that the claim of bias is unfounded, it must then review Brady's claims, affording whatever preclusive effect Florida courts would afford to the Board's *factfinding.* In *Elliott,* the Supreme Court held that "[w]hen a state agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's *factfinding* the same preclusive effect to which it would be entitled in the State's courts." *Elliott,* 478 U.S. at 799, 106 S.Ct. at 3226. (emphasis added). In *Gjellum v. City of Birmingham,* 829 F.2d 1056 (11th Cir.1987), this court made clear that under *Elliott,* only *factual* issues, not *legal* issues, may be precluded from relitigation by a prior administrative decision. *See Gjellum,* 829 F.2d at 1068 (emphasizing that "*Elliott* carefully limited its holding to state agency *factfinding* ") (emphasis in original).

The Board's consideration of the petition to dismiss Brady involved both matters of fact and matters of law. For example, the Board's determination of whether Brady was guilty of misconduct, gross insubordination and willful neglect of duty "as alleged in the petition," required factual determinations of the veracity of the allegations, e.g., whether Brady criticized the administration during class time, whether he suggested that the administration be replaced, and whether he refused to abide by the chain of command in presenting job-related complaints.

Additional inquiries by the Board, however, necessarily

implicated matters of law. For example, the Board's determination of whether the petition was filed to retaliate against Brady for publicly criticizing President King, the administration and the Board required the Board to make two legal determinations: first, whether Brady's speech "address[ed] a matter of public concern"; and if so, whether "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," outweighed Brady's interest, "as a citizen, in commenting upon matters of public concern." *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896-97, 97 L.Ed.2d 315 (1987) (quotation & citation omitted); *Kurtz v. Vickrey,* 855 F.2d 723, 726 (11th Cir.1988).[8]

Although the Board may appear to have found as a factual matter that the petition was not filed for an improper purpose, in doing so the Board necessarily resolved, at least implicitly, the critical *legal* issue of the nature and extent of the first amendment protection due Brady's public criticism. *Cf. Edmundson v. Borough of Kennett Square,* 4 F.3d 186, 191-93 (3d Cir.1993) (finding that agency necessarily resolved this legal issue in finding that plaintiff was not suspended in retaliation for exercising first amendment rights). Although the Board may have

---

[8]We remind the district court that first amendment retaliatory discharge cases are generally analyzed under the following four-part test: (1) whether the employee's speech involved a matter of public concern; (2) whether the employee's interest in the speech outweighed the government's legitimate interest in promoting efficient public service; (3) whether the speech played a substantial part in the challenged employment decision; and (4) whether the employer would have made the same employment decision regardless of the protected speech. *Tindal v. Montgomery County Comm'n,* 32 F.3d 1535, 1539-40 (11th Cir.1994).

believed that Brady's speech was unprotected because it was insubordinate or harmful to the College, or because Brady had bypassed the chain of command, such a determination involved precisely the balancing process that "is a question of law for the court, not a question of fact for resolution by a fact finder," *Joyner v. Lancaster,* 815 F.2d 20, 23 (4th Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987).

It was the responsibility of the district court, not the Board, to resolve the legal question of whether Brady's discharge violated his rights.  As the Third Circuit has observed,

> We see a profound difference in the ability of a Commission composed of lay citizens to resolve matters of credibility and fact—e.g., whether plaintiff actually made the statements in the circumstances alleged despite his denials—and the ability to determine the more complex question of whether the statements are constitutionally protected in accordance with the considerations articulated in [Supreme Court caselaw]....  The Commission simply does not have the background or experience to finally decide issues that give pause even to federal courts despite their familiarity with that area of the law.

*Edmundson,* 4 F.3d at 192-93 (citations omitted).

The district court erred by finding Brady's constitutional claims wholly precluded.  On remand, if the court finds that Brady's bias argument fails, it may then accord the Board's factfinding the same preclusive effect to which it would be entitled in Florida courts, except as discussed below.

### Claims Against the Board Itself

 Finally, intertwined with the question of bias is whether the Board's actions are entitled to any preclusive effect as to Brady's claims *against the Board itself.*  Brady argues that these claims could not have been "before" the Board during its consideration of

the petition as required by *Elliott* because the actions underlying the claims—his actual firing and the Board's proceedings—were not complete at the time of the hearing. In addition, Brady contends that due process concerns prohibit the Board from resolving any questions of the constitutionality of its own actions.[9]

We find that even if Brady's claims against the Board were "before" the Board as required by *Elliott,* the Board would be patently unable to render a binding judgment on a claim against itself, as "no man can be a judge in his own case," *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Thus, the Board proceedings do not preclude any aspect of Brady's claims against the Board for the Board's alleged wrongdoing, and the district court therefore must resolve even the factual issues underlying these claims.[10]

### *DISSENT POLICY*

Finally, we consider the court's failure to address the challenge to the College's policy on dissent. The challenged policy gave President King authority to manage dissent and demonstrations, including the authority to "delineate types of acceptable and unacceptable dissent." In furtherance of that

---

[9]These allegations in large part are the same as the allegations of bias.

[10]Although not argued by the defendants, we note that Brady's procedural due process claim appears to be barred by *McKinney v. Pate,* 20 F.3d 1550, 1563 (11th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995) (stating that "even if McKinney suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation") (emphasis in original).

policy, the College administration created what was known as a "designated demonstration area" located in a corner of campus removed from the King Performing Arts Center. When this policy was in place, Brady, Thornquest and a dozen other protesters sought to conduct a peaceful demonstration in front of the Performing Arts Center, rather than in the designated area, which resulted in the arrest of two of the demonstrators.

In the amended complaint, the professors claimed that the policy was unconstitutional on its face and as applied to them. Although the district court did not address these claims in its summary judgment order, it dismissed them upon entry of the final judgment. On appeal, the professors argue that remand is necessary due to the existence of genuine issues of material fact regarding the constitutionality of the policy. The defendants respond that remand is unnecessary because the record clearly indicates that summary judgment was appropriate. According to defendants, the propriety of summary judgment is demonstrated by evidence that the College is not a public forum and that the dissent policy reasonably regulates the time, place and manner of demonstrations.

From the record before us, we cannot determine that there is no genuine issue of material fact on relevant questions such as whether the performance center is a public forum; if it is a public forum, whether the regulations are narrowly drawn to effectuate a compelling state interest; and if it is not a public forum, whether the regulations are reasonable. Thus, we remand to the district court for consideration of the claims against the dissent policy.

*CONCLUSION*

For the foregoing reasons, we affirm the district court's judgment as to Ward's and Thornquest's unlawful discharge claims; reverse the judgment as to Brady's claims and the claims against the dissent policy; and remand for further proceedings consistent with this opinion.

**AFFIRMED** in part; **REVERSED** in part; and **REMANDED**.

BLACK, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's decision to remand this case as to Brady's as-applied first amendment claim with respect to his discharge and as to Appellants' facial first amendment claim with respect to the dissent policy. I respectfully disagree, however, with the majority's decision to entertain Brady's claim that his procedural due process rights were violated because the individual Trustees and the Board were biased against him.

It is undisputed that Brady failed to appeal the Board's decision in state court. His procedural due process claim is therefore squarely barred, as a matter of law, by this court's en banc holding in *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995).[1] In that case, Appellant Millard McKinney was also a state

---

[1]Although the majority opinion briefly addresses *McKinney* in footnote 10 as an issue to be considered on remand, the issue should be disposed of by this court. First, the fact that the plaintiffs did not discuss *McKinney* in their briefs does not vitiate this court's ability to base its holding on that case. *See Ford v. United States,* 989 F.2d 450, 453 (11th Cir.1993) (stating that "[w]e have the discretion to consider a new theory if the issue is a pure question of law and the court's failure to consider it would result in a miscarriage of justice"). Second,

employee challenging his termination, which was rendered by a state administrative body. *Id.* at 1554-1555. Like Brady, McKinney's procedural due process claim was not that he did not receive a hearing, but that the hearing was before a biased decision maker. *Id.* at 1562. Like Brady, McKinney did not appeal his termination in the state court system, but instead filed a § 1983 suit. *Id.* at 1555.

The court held that McKinney did not state a procedural due process claim because "due process is satisfied when the challenger has an opportunity to present his allegations and to demonstrate the alleged bias." *Id.* at 1562. The court reasoned that "even if McKinney suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." *Id.* at 1563 (emphasis in original). Addressing whether McKinney had remedies available, the court concluded that "[e]ven if McKinney's bias allegations are true, the presence of a satisfactory state remedy mandates that we find that no procedural due process violation occurred." *Id.* at 1564.

Thus, pursuant to the holding of *McKinney,* even if Brady's allegations of bias are true, he has not suffered a procedural due process *violation* because state court remedies were available to

our constitutional inquiry in procedural due process questions focuses on the state's ability to provide either pre- or post-deprivation process. *See Parratt v. Taylor,* 451 U.S. 527, 538, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981). Such an inquiry can be answered as a matter of law by an appellate court. *See Hudson v. Palmer,* 468 U.S. 517, 533-537, 104 S.Ct. 3194, 3204-3205, 82 L.Ed.2d 393 (1984).

him after the Board rendered its decision.  To clarify this point, I agree with the majority's statement at footnote 3 that a § 1983 claim cannot be barred by a plaintiff's failure to exhaust state remedies with respect to an unreviewed administrative action.  It should be noted, however, that neither this dissent nor the holding in *McKinney* intends to create an exhaustion requirement.  Instead, these holdings go directly to the existence of a constitutional violation in the first instance.  *See id.* at 1564 n. 20.  Brady, like McKinney, had a state remedy to challenge the Board's deprivation of his property rights.  He simply does not have a procedural due process claim unless and until the Florida courts fail to provide him with that remedy.

For these reasons, I respectfully dissent from the majority's decision to remand the case to determine whether Brady's procedural due process rights were violated.